**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**AT WICHITA**

| | | |
|---|---|---|
| **MANUEL FRANCO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.:** |
| **v.** | ) | |
| | ) | |
| | ) | **REQUEST FOR JURY TRIAL** |
| **MOORE WATER TREATMENT, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

Serve Resident Agent:
**Ralph Moore**
**241 North. Hydraulic Street,**
**Wichita, Kansas 67214**

## COMPLAINT

COMES NOW Plaintiff, Manuel Franco, and for his cause of action against the above-named Defendant, alleges and states as follows:

1. Plaintiff is, and at all times set forth below was, a resident of the State of Kansas.

2. Defendant is a corporation, organized under the laws of Kansas with its principal place of business in Wichita, Kansas.

3. Plaintiff worked for Defendant in Kansas.

4. Defendant works in an industry affecting interstate commerce, in that Defendant transports and sells water and air purifying systems and products throughout the United States, including Kansas.

5. Defendant employed more than 15 employees in 2023 and does so currently.

6. Defendant is thus subject to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Count

II of Plaintiff's Complaint arises under the laws of the United States, specifically the Americans with Disabilities Act as Amended, 42 U.S.C. § 12101 *et seq*.

8. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count I of Plaintiff's Complaint, as that count is so related to the claims encompassed within Count II as to form one case or controversy.

**FACTS COMMON TO ALL COUNTS**

9. Plaintiff began working for Defendant in October 2019 as a Sales Representative.

10. Plaintiff worked for Defendant from October 2019 until July 2022.

11. Plaintiff took a voluntary break from his position from July 2022 until October 2022.

12. Plaintiff resumed working for Defendant as a Sales Representative in October of 2022.

13. Plaintiff's responsibilities as a Sales Representative were to travel to customer sales appointments, source new customers, and maintain existing customer accounts.

14. Plaintiff's sales territory included customers that were within a two-hour and sometimes two-and-a-half-hour radius of his home.

15. Plaintiff resided in Scott City, Kansas.

16. From the start of Plaintiff's employment until June of 2023, Plaintiff had minimal disciplinary problems and no issues in performing his job duties.

17. Pursuant to Defendant's policies, Sales Representatives were required to travel to Defendant's office location in Garden City, Kansas after a successful sales appointment and turn in the executed sales documents to be compensated for the sale.

18. On June 12, 2023, Plaintiff had a sales consultation appointment in Syracuse,

Kansas.

19. The appointment was successful.

20. Plaintiff drove to Defendant's Garden City, Kansas office after the appointment to turn in the executed sales documents so that Plaintiff could be compensated for the sale.

21. While Plaintiff was driving to Defendant's Garden City, Kansas office, it was raining heavily.

22. Plaintiff's vehicle hydroplaned, which caused Plaintiff to veer off the road and hit a tree.

23. Following the impact, Plaintiff felt pain and stiffness in his neck and a tingling sensation in the tip of his fingers.

24. Plaintiff called Darryl Younger, the Sales Manager for Defendant, to let Younger know that Plaintiff had just been in an accident.

25. Younger told Plaintiff that he would have to call Plaintiff back.

26. Plaintiff called 911 and was transported by ambulance to Kearny County Hospital.

27. The providers at Kearny County Hospital evaluated Plaintiff for his injuries.

28. Plaintiff was discharged from the hospital several hours later.

29. The emergency room physician gave Plaintiff a note excusing him from work for a week.

30. Within the week following Plaintiff's injury, Plaintiff asked Jessica Engstrom, a Human Resources representative for Defendant, about receiving authorized medical treatment through workers' compensation for his injuries, because he was still experiencing pain and discomfort.

31. Engstrom informed Plaintiff that Defendant denied his request for authorized medical treatment because Defendant did not consider Plaintiff's injury from the June 12, 2023, motor vehicle accident to be work-related.

32. In the days following the accident, Plaintiff continued to experience pain in his neck, back, and numbness in his fingertips.

33. Plaintiff remained off work recovering from his injuries during the week following the accident.

34. Plaintiff continued to request authorized medical treatment from Defendant.

35. Plaintiff informed management for Defendant that he did not feel comfortable returning to work until he received treatment.

36. Younger sent Plaintiff multiple text messages asking when Plaintiff could return to work while Plaintiff was off work recovering from his injuries.

37. Plaintiff ultimately returned to work on July 3, 2023.

38. Upon Plaintiff's return, Younger and Plaintiff had a heated conversation.

39. During the conversation, Younger accused Plaintiff of "milking" his injuries.

40. Thereafter, Plaintiff was assigned less favorable and more distant sales appointments and leads.

41. Defendant historically assigns less favorable and more distant sales appointments and bad leads to undesired and poorly performing employees, resulting in decreased commission for those employees.

42. On or about July 12, 2023, Plaintiff had to miss a sales appointment because his daughter injured the back of her leg on a trampoline.

43. Plaintiff's babysitter called Plaintiff to notify him that his daughter may need

stiches.

44. Plaintiff sent two text messages to Younger and the other sales representatives.

45. Plaintiff stated in the first text message: “May be better just to reschedule came home to deal with one of my children being injured” and in the second text message stated: “We are on the way to get my daughter’s knee stitched up right now” [sic].

46. Plaintiff ultimately decided to bandage his daughter’s leg instead of going to the emergency room because the cut was narrow enough to apply a butterfly suture, and Plaintiff knew the cost of an emergency room visit would be significant.

47. By the time Plaintiff made the decision to forgo an emergency room visit, he did not have enough time to travel to the sales appointment, so Plaintiff did not notify Younger and the other sales representatives.

48. On or about July 19, 2023, Younger went to Plaintiff’s house to drop off a few sales contracts while Plaintiff was not home.

49. When Younger arrived at Plaintiff’s house, the babysitter answered the door.

50. Younger asked to come inside the house.

51. Younger asked the babysitter what happened to Plaintiff’s daughter’s leg and asked if she had to get stiches.

52. The babysitter who was questioned by Younger was not the same babysitter who was present when Plaintiff’s daughter was injured.

53. The babysitter told Younger that she did not know what he was talking about.

54. Plaintiff’s daughter was sitting on the couch inside the house.

55. Younger approached Plaintiff’s daughter and looked her over.

56. Thereafter, Younger called Plaintiff and asked him to meet at Plaintiff’s house.

57. Plaintiff arrived at his house Plaintiff met Younger on Plaintiff’s front

porch, where Younger was waiting.

58. Younger asked if Plaintiff lied about what happened to his daughter to get out of work.

59. Younger stated that he did not t see a mark on Plaintiff's daughter's knee, and that Plaintiff would know if his daughter needed stitches.

60. Plaintiff told Younger that he did not lie to get out of work.

61. Plaintiff told Younger that he had run up a big hospital bill recently with the car accident, and the job was not paying his bills.

62. In response, Younger instructed Plaintiff to immediately return his company property.

63. Plaintiff asked Younger if he was firing him, and Younger confirmed that he was firing Plaintiff.

64. Plaintiff sought treatment on his own and attended an appointment with Genesis Family Health on August 23, 2023.

65. Plaintiff eventually filed a workers' compensation claim and received authorized medical treatment for the injuries he sustained in the motor vehicle accident on June 12, 2023.

66. Plaintiff was released from authorized medical treatment with no permanent work restrictions in May of 2024. .

67. On January 17, 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant engaged in discriminatory actions that are being raised in this lawsuit, or alternatively, all conduct alleged herein would have arisen from the investigation of such Charge of Discrimination.

68. On July 11, 2024, the EEOC issued Plaintiff a Notice of Right to Sue and thereby closed the administrative matter associated with the Charge of Discrimination.

69. Plaintiff has fulfilled all conditions precedent to the bringing of these claims and has duly exhausted all administrative procedures prior to instituting this lawsuit in accordance with the law.

70. All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees, acting within the course and scope of their employment, as set forth herein.

## COUNT I - RETALIATION IN VIOLATION OF PUBLIC POLICY (KANSAS WORKER'S COMPENSATION ACT)

71. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 70 of his Complaint, as though fully stated herein.

72. Plaintiff exercised rights granted by the Kansas Worker's Compensation Act.

73. These rights include but are not limited to reporting a work-related injury, requesting medical treatment for a work-related injury, reasonable time off for convalescence, and seeking other worker’s compensation benefits.

74. Defendant took adverse actions against Plaintiff including, but not limited to, assigning Plaintiff less favorable sales appointments, and discharging Plaintiff from employment.

75. Defendant's adverse actions taken against Plaintiff were each based upon, and directly related to, Plaintiff exercising his rights granted by the Kansas Worker's Compensation Act.

76. Defendant's adverse actions against Plaintiff violate State public policy clearly declared by the Kansas Courts and the Kansas Legislature.

77. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment

opportunities, and will continue to suffer the same unless and until this Court grants relief.

78. Defendant acted toward Plaintiff with willful conduct, wanton conduct, and/or malice.

79. Thus, an award of punitive and exemplary damages is appropriate.

WHEREFORE, Plaintiff prays for judgment against the above-named Defendant in an amount in excess of $75,000, for punitive damages, for the costs of this action, and for such other and further consideration and relief as the Court may deem just and equitable.

**COUNT II - DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 *et. seq.***

80. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 79 of his Complaint, as though fully stated herein.

81. Plaintiff suffered from physical impairments that substantially limited one or more of his major life activities, including but not limited to his ability to walk, drive, and ambulate without pain and discomfort.

82. Defendant regarded Plaintiff as suffering from a physical impairment and regarded Plaintiff's physical impairment as limiting Plaintiff from life activities, including the ability to maintain employment.

83. Defendant regarded both Plaintiff's actual physical impairments and these additional physical impairments as limiting Plaintiff from these activities for much longer than they actually did.

84. This is demonstrated by Defendant terminating Plaintiff from employment.

85. In reality, Plaintiff was always able to perform the essential job functions of his position with or without reasonable accommodations.

86. Thus, Plaintiff suffered from a "disability" as defined by 42 U.S.C. § 12102(1).

87. Defendant took adverse employment actions against Plaintiff, including but not limited to: refusing to reasonably accommodate Plaintiff's physical impairments; assigning less favorable sales appointments and leads to Plaintiff, and discharging Plaintiff from employment.

88. A/the motivating in these adverse employment actions was Plaintiff's disability—whether actual or perceived.

89. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court grants relief.

90. Defendant acted toward Plaintiff with willful conduct, wanton conduct, and/or malice.

91. Thus, an award of punitive and exemplary damages is appropriate.

92. Plaintiff is also entitled to recover all of his costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against the above-named Defendant in an amount in excess of $75,000, for punitive damages, for the costs of this action, for attorneys' fees, and for such other and further consideration and relief as the Court may deem just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury in the United States District Court for the District of Kansas to be held in Wichita, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully submitted,

*/s/ Brittany K. Ussery*

Daniel L. Doyle, KS Bar No. 11260
Robert A. Bruce, KS Bar No. 28332
Brittany K. Ussery, KS Bar No. 30022
DOYLE & BRUCE LLC
748 Ann Avenue
Kansas City, Kansas 66101
(913) 543-8558
(913) 543-3888 Facsimile
Dan@KCLaw.com
Robert @KCLaw.com
Brittany@KCLaw.com
**ATTORNEYS FOR PLAINTIFF**